# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

JEFFREY DEWAYNE CLARK,

*Plaintiff*,

GARR KEITH HARDIN,

*Plaintiff-Appellee*,

*v.*

LOUISVILLE-JEFFERSON COUNTY
METRO GOVERNMENT,

*Defendant*,

ROBERT THURMAN, Kentucky State Police
Crime Lab Forensic Serologist, in his
individual capacity,

*Defendant-Appellant*.

No. 24-5061

Appeal from the United States District Court for the
Western District of Kentucky at Louisville, Civil Action No. 3:17-cv-00419

## APPELLEE'S RESPONSE TO PETITION FOR REHEARING EN BANC

Anthony Balkissoon
Anna Benvenutti Hoffmann
Emma Freudenberger
Mary Katherine McCarthy
Neufeld Scheck Brustin Hoffmann &
Freudenberger, LLP
200 Varick Street, Suite 800
New York, NY 10014
Phone: (212) 981-9065
*Counsel for Appellee Garr Keith
Hardin*

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................1

STATEMENT OF THE CASE.............................................................................1

ARGUMENT ......................................................................................................5

    I.    (Issue 1) *Gregory* did not establish a "categorical prohibition against interlocutory review" in *Brady* cases. In any event, en banc review is unwarranted........................................................................................5

    II.    (Issue 2) *Moldowan* did not adopt a no-fault or negligence standard. It's in line with cases from other circuits. And Thurman would lose under any standard. ...................................................................11

i

# TABLE OF AUTHORITIES

**Federal Cases**

*Brawner v. Scott County*, 14 F.4th 585 (6th Cir. 2021)..............................................14

*Chiaverini v. City of Napoleon*, 144 S. Ct. 1745 (2024).........................................15

*Farmer v. Brennan*, 511 U.S. 825 (1994)..................................................................14

*Gillispie v. Miami Township*, 3:13-cv-00416-TMR (S.D. Ohio)............................13

*Gillispie v. Miami Twp., Ohio*, 18 F.4th 909 (6th Cir. 2021) ...............................5, 6

*Gregory v. City of Louisville*, 444 F.3d 725 (6th Cir. 2006) .................................1, 5

*Johnson v. City of Cheyenne*, 99 F.4th 1206 (10th Cir. 2024) ................................14

*Moldowan v. City of Warren*, 578 F.3d 351 (6th Cir. 2009).....................................1

*Owens v. Balt. City State's Atty's Off.*, 767 F.3d 379 (4th Cir. 2014).......................13

*Siggers v. Alex*, 2023 WL 5986603 (6th Cir. Sept. 12, 2023)....................................7

*Sykes v. Anderson*, 625 F.3d 294 (6th Cir. 2010) .....................................................15

*Tennison v. City & Cty. of San Francisco*, 570 F.3d 1078 (9th Cir. 2009) ..............14

*Villasana v. Wilhoit*, 368 F.3d 976 (8th Cir. 2004)..................................................14

*Williams v. Mehra,* 196 F.3d 685 (6th Cir. 1999)......................................................5

**Other Authorities**

Thomas M. Cooley, *The Law of Torts* (1880)...........................................................15

Restatement (Second) of Torts § 669 (Am. L. Inst. 1977)........................................15

**INTRODUCTION**

This Court has already denied rehearing en banc on both questions presented in defendant-appellant Robert Thurman's petition for rehearing en banc. *See Moldowan v. City of Warren*, 578 F.3d 351 (6th Cir.), *rehearing and rehearing en banc denied* (6th Cir. 2009); *Gregory v. City of Louisville*, 444 F.3d 725 (6th Cir.), *rehearing denied* (6th Cir.), *rehearing en banc denied* (6th Cir. 2006). The fifteen-plus years since those denials have provided no reason to change course: the rules petitioner seeks to litigate have rarely arisen and are even more rarely, if ever, outcome-determinative. They almost never matter "from a practical standpoint," as Judge Stranch put it, and loom "larger in theory than in practice," as Judge Kethledge put it. Stranch Con. 17; *Moldowan*, 578 F.3d at 406 (Kethledge, J., concurring).

Independently, Thurman insists on viewing the facts in his own favor, making purely legal review impossible. And he exhibited bad faith in spades, so must lose no matter what the standard is for civil *Brady* claims.

The petition should be denied.

**STATEMENT OF THE CASE**

Keith Hardin served 22 years in prison for a murder he did not commit. Law enforcement decided he was guilty not because of anything they uncovered in their investigation, but because of Hardin's interest in Neo-Satanism. Hardin has autism spectrum disorder, one core symptom of which is hyperfixation on a particular

1

topic—in Hardin's case, world religions (by the time of trial, his interest had moved from Neo-Satanism to Zen Buddhism). Psychologist Report, R. 316-87, PageID 25100–03, 25105; Hardin Declaration, R. 316-2; Hardin Deposition, R. 316-39, PageID 23778–79; Hardin Testimony, R. 316-82, PageID 25058.

To convict Hardin, law enforcement used Wite-Out to change the date on the victim's death certificate to get around Hardin's alibi; invented an entirely false story about Hardin's interest in human sacrifice; and fabricated a statement from a jailhouse informant, among other misconduct. *See* Meade County Opinion, R. 388, PageID 34314–19; Hardin Declaration, R. 316-2, PageID 20927; Handy Report, R. 314-12, PageID 8310; First Handy Deposition, R. 317-39, PageID 27648–52.

Thurman, a forensic serologist, played an essential role. Thurman's notes show that, before he conducted any relevant testing, he was told Hardin was guilty of the murder, was an "avid devil worshippe[r]," and had failed a polygraph. Thurman File, R. 316-77, PageID 24948. Thurman File, R. 316-77, PageID 2494; Thurman Deposition, R. 316-5, PageID 21300–17. Even if that information were true (it wasn't), an "ethical analyst" would "try to avoid" hearing it so as not to bias his testing. Thomas Deposition, R. 316-9, PageID 22006–12.

Thurman then compared Hardin's hair to one found on the victim's pants and saw they were *dissimilar* in color and two microscopic characteristics (pigment density and medulla width), recording this data in contemporaneous notes. Thurman

Deposition, R. 316-5, PageID 21210–11; Thomas Deposition, R. 316-9, PageID 21978–79; Hair Notes, R. 316-8, PageID 21778, 21780, 21783. Thurman never disclosed that exculpatory data to the prosecution or defense. District Court Opinion, R. 390, PageID 34375.

Nor did Thurman incorporate that exculpatory data into his official report. Instead, Thurman officially reported the exact opposite: that the hairs were *similar* in color and all microscopic characteristics—the most incriminating conclusion possible. Thurman Report, R. 316-36, PageID 23748; Thurman Deposition, R. 316-5, PageID 21091–92; Thomas Deposition, R. 316-9, PageID 21872. Thurman's own supervisor was "surprised and disturbed" by that conclusion, calling the report "a fraudulent representation" that was "shocking" and "extremely wrong and extremely concerning." Thomas Deposition, R. 316-9, PageID 21983, 21988, 22047–49.

Hardin was wrongfully convicted and spent decades in prison before DNA testing showed the hair wasn't his and he was exonerated. He sued the people responsible for his wrongful conviction. The district court held that a reasonable jury could find that Thurman had "acknowledged" he "had an obligation to ensure that all exculpatory information was provided" to the prosecution; that Thurman "conceded" his notes documenting his data were "inconsistent with" his final report; that Thurman provided the "sole physical evidence ostensibly placing Hardin at the scene of [the] murder"; and that Hardin was exonerated based on the critical hair not

being his, making clear how important the hair evidence was. District Court Opinion, R. 390, PageID #34375–77. The district court found that "the exculpatory value of Thurman's observation notes arguably should have been readily apparent to Thurman" and that the suppression of those notes was prejudicial. *Id.* The district court thus held that Thurman was not entitled to qualified immunity at the summary-judgment stage because the record evidence would permit a reasonable jury to find Thurman had violated the due-process rights that were clearly established by *Brady v. Maryland* and its progeny.

Thurman took an interlocutory appeal to this Court. He argued that his notes (which documented his data) were neither exculpatory nor material under *Brady*, and that the law in the mid-1990s did not clearly establish that *Brady*'s duty of disclosure applied to scientists. Op. 2. The panel lacked jurisdiction over Thurman's first argument because he failed to concede the district court's finding that a "reasonable jury could find for Hardin on both of these elements of his *Brady* claim." Op. 11. The panel thus held that the exculpatory and materiality issues "are beyond our reach at this juncture." Op. 11. The panel rejected Thurman's second argument on the merits because "it was clearly established in 1990 that a scientist could violate *Brady* by failing to disclose material exculpatory evidence." Op. 14. Judges Stranch and Murphy wrote separate concurrences. Thurman petitioned for rehearing en banc.

**ARGUMENT**

**I.**     **(Issue 1)** *Gregory* **did not establish a "categorical prohibition against interlocutory review" in** *Brady* **cases. In any event, en banc review is unwarranted.**

Thurman asks for rehearing en banc of the "categorical prohibition against interlocutory review" of Section 1983 *Brady* claims that he says this Court announced in *Gregory v. City of Louisville*, 444 F.3d 725 (6th Cir. 2006). But *Gregory* announced no such prohibition. Even if it did, that would, as Judge Stranch explained, rarely make a difference "[f]rom a practical standpoint." Stranch Con. 17. Moreover, this case is a bad vehicle for addressing any such categorical prohibition because Thurman loses with or without it.

**1.** It is common ground that in an interlocutory qualified-immunity appeal, this Court lacks jurisdiction to review fact disputes. So a defendant may not dispute a district court's conclusion that "the pretrial record sets forth a genuine issue of fact for trial" nor "challenge the inferences that the district court draws from those facts." *Gillispie v. Miami Twp., Ohio*, 18 F.4th 909, 916 (6th Cir. 2021). In *Williams v. Mehra*, this Court en banc held it had jurisdiction over what would have been "a mixed question of law and fact" specifically because the defendant conceded the facts, leaving only the legal question. 186 F.3d 685, 690 (6th Cir. 1999) ("Plaintiff's account of these basic facts is admitted by Defendants for purposes of this appeal. Therefore, there is no factual dispute that would divest this court of jurisdiction.").

5

In *Gregory*, a case concerning a series of rapes, the defendant did *not* concede the facts. The district court held that a reasonable jury could conclude the defendant suppressed evidence that, after the plaintiff had been arrested, another similar rape occurred (suggesting someone *else* must have been the serial rapist). On appeal, the defendant argued that the "[p]laintiff failed to establish that [the defendant] was aware" of the rape and "t[ook] issue with the district court's determination that there exists a genuine issue of fact for trial." 444 F.3d at 743–44. So when the Court wrote that "materiality under *Brady* is a mixed question of law and fact for the jury," *id*. at 744, that was because the defendant refused to concede the facts, so the "mixed question" remained "mixed," divesting the Court of jurisdiction. *Id*. (after detailing the defendant's failure to concede the facts, holding "[a]ccordingly, this Court lacks jurisdiction….").

Thurman can only suggest that *Gregory* announced a categorical rule by lifting one sentence ("materiality under *Brady*…") entirely out of context. That's not how judicial opinions should be read, and reading the sentence that way makes it *dicta*: the Court was divested of jurisdiction under the ordinary no-contesting-facts rule, so there was no need to subtly announce a new, *Brady*-specific rule.

Confirming that *Gregory* announced no categorical rule: Some *Brady* cases dismiss interlocutory appeals without citing *Gregory* for any *Brady*-specific rule. *See, e.g.*, *Gillispie*, 18 F.4th at 918. Others cite *Gregory* and then address *Brady*

claims on the merits (when the defendant appropriately concedes the facts). *See, e.g.*, *Siggers v. Alex*, No. 22-1182, 2023 WL 5986603, at *3, 5–6 (6th Cir. Sept. 12, 2023).

**2.** Even if *Gregory* erected a categorical rule, rehearing en banc would be unwarranted. As Judge Stranch wrote, whatever "theoretical" import such a rule might have, "practically speaking, it forecloses a very narrow range of appeals." Stranch Con. 18. If the rule had any application at all, it would be only in a wrongful-conviction case (not particularly common); only where a *Brady* claim was brought (as opposed to a case involving only different claims, like fabrication of evidence or coerced confessions); only when summary judgment was sought (not every case, given the requirement that facts be viewed in the plaintiff's favor); only when summary judgment was denied (despite the substantial hurdle of qualified immunity); only when, as Judge Stranch wrote, the defendant "walk[s] a narrow tightrope," Stranch Con. 18, meaning he follows the no-contesting-facts rule; and finally, the rule would only *matter* if after all that, this Court identified a purely legal issue *and* the district court got that issue wrong.

So far as counsel can tell, the purported categorical rule has *never* made a difference in a case. Neither concurrence identified a case where it mattered; the petition doesn't point to any; and counsel for Hardin—who practice nearly exclusively in the area of wrongful convictions—don't know of any.

**3.** Even if this Court wanted to review a rule that *Gregory* never announced and that matters only in theory, this is the wrong case for that intellectual exercise. That's because, as Judge Stranch recognized, Thurman has "not properly conceded" Hardin's version of the facts. Stranch Con. 18–19.

Thurman promises he is conceding "the only 'historical fact' in issue: that the notes may be inconsistent with the final lab report." PFREB 9. Obviously, on the merits, that concession would mean that Thurman loses, since—as the district court found—the inconsistency means the notes would have been meaningful impeachment evidence. District Court Opinion, R. 390, PageID 34375 (noting that impeachment evidence falls within the *Brady* rule), 34376 ("The unavailability of Thurman's observation notes for cross-examination by Hardin's counsel could certainly be seen to seriously undermine confidence in the outcome of Hardin's trial.").

But more importantly for present purposes, Thurman is *not* conceding the only relevant facts. Counsel for Thurman tells this Court that the testing data documented in the notes are "irrelevant" because Thurman's final opinions "were based solely upon [his] confirmatory comparison of one hair to another under the microscope." PFREB 3, 6. Or as he puts it elsewhere, the notes "were not source data for Thurman's opinion[.]" PFREB 9. None of that is true, and it all contradicts the

district court's findings and the evidence in the summary-judgment record. The district court found that the notes were *not* irrelevant:

1. "Thurman's notes documented characteristics that he purportedly observed when examining the hairs under a microscope, such as color, length, diameter, scaling, and pigmentation." District Court Opinion, R. 390, PageID 34367.

2. "Thurman acknowledged that his 'final report had to be an accurate and thorough reflection of the data [he] found and the conclusions [he] drew, both inculpatory an[d] exculpatory[.]" *Id*. at PageID 34375.

3. "Thurman's report, however, did not mention the inconsistencies between his observation notes and conclusion." *Id*.

4. "Considering Thurman's concession that his observation notes may be inconsistent with his report, Thurman's notes would have been exculpatory." *Id*.

Thurman's own testimony is consistent with the district court's findings, and inconsistent with his counsel's arguments. Rather than saying his notes were not "source data," or that they were "irrelevant," Thurman agreed that his notes contained the "underlying data" for his conclusion and they were required to be accurate so that another analyst could look at his underlying data, look at his final report, and understand how he reached his conclusion. Thurman Deposition, R. 316-

5, PageID 21075–76, 21102–03, 21185–86, 21327–28. His supervisor confirmed the same. Thomas Deposition, R. 316-9, PageID 21828–29, 21830–31, 21907–10.

As mentioned earlier, Thurman's notes documented that Hardin's hair and the hair found on the victim's pants were *dissimilar* in color and two microscopic characteristics. Thurman Deposition, R. 316-5, PageID 21210–11; Thomas Deposition, R. 316-9, PageID 21978–79; Hair Notes, R. 316-8, PageID 21778, 21780, 21783. Contrary to the argument advanced by Thurman's counsel, the record below contained *no* evidence that hairs could differ in microscopic characteristics and nonetheless be called "similar" based solely on their overall appearance under the microscope. Indeed, when the petition makes this claim, PFREB at 3, it cites record evidence that disproves it. The very page cited contains a transcript of Thurman testifying that he could not call hairs "similar" unless they matched in all fifteen microscopic characteristics and *additionally* in a final confirmatory comparison. R. 316-48, PageID 23939. The evidence for this—from Thurman's own mouth, his supervisor's, and his expert witness's—was substantial. Thurman Deposition, R. 316-5, 21119, 21158, 21165–66, 21188, 21198–200, 21263, 21274; Thomas Deposition, R. 316-9, PageID 21830, 21946–48, 21973–75; Reid Deposition, R. 316-15, PageID 22996.

Plainly, Thurman has violated the no-contesting-facts rule, many times over. Judge Murphy "found Thurman's briefing unclear[.]" Murphy Con. 25. Were this

Court to grant rehearing en banc, the judges will be forced to spend substantial time parsing individual sentences in Thurman's unclear briefing, trying to cut away the improper factual disputes to see if there is a pure legal issue underneath it all—and there isn't. So even though *Gregory* announced no categorical rule, and the rule wrongly attributed to *Gregory* would have no practical effect, it's *also* true that Thurman is a particularly bad litigant to raise the correctness of such a rule: because of his insistence on disputing the facts, this Court lacks jurisdiction whether the rule exists or not.

II.    **(Issue 2)** *Moldowan* **did not adopt a no-fault or negligence standard. It's in line with cases from other circuits. And Thurman would lose under any standard.**

**1.** The petition also asks for rehearing en banc by urging that this Court's holding in *Moldowan* adopted a "no-fault" or "simple negligence" standard for Section 1983 *Brady* claims, making this Court an "outlier." PFREB 2, 11. That's all wrong: *Moldowan* is not a no-fault standard and it explicitly rejected a negligence standard, consistent with other circuits.

**a.** Start with *Moldowan* itself. This Court plainly rejected a negligence standard: it acknowledged it was *bound* to do so, because the Supreme Court had held that mere negligence cannot support a Section 1983 due-process claim. 578 F.3d at 382–83. With that out of the way, the Court held that a plaintiff can meet the required higher standard by showing an officer suppressed evidence where the

"exculpatory value" of the evidence was "apparent." *Id*. at 388. When *that* showing

is made, no "further" evidence of bad faith is required:

> The reason no *further* showing of animus or bad faith is required is that, where the police have in their possession evidence that they know or should know might be expected to play a significant role in the suspect's defense, the destruction or concealment of that evidence can *never* be done in good faith and in accord with their normal practice. Consequently, requiring a criminal defendant or § 1983 plaintiff to show a "conscious" or "calculated" effort to suppress such evidence would be superfluous.

*Id*. at 388–39 (cleaned up, emphasis in original). And indeed, *Moldowan* affirmed

the denial of summary judgment for one officer (Ingles, for whom the exculpatory

value was apparent) but *reversed* as to another officer (Schutlz, who had "no

knowledge whatsoever about the nature of the evidence"). Even Judge Kethledge,

who preferred a "bad faith" standard, acknowledged that "the majority does not

simply extend *Brady*'s absolute duty of disclosure to police. . . . [It] limits the scope

of that duty to evidence whose materially exculpatory value was known to the

particular officer sued." *Id.* at 406–07 (Kethledge, J., concurring). Judge Kethledge

wrote that his preferred standard (which is Thurman's preference too) and the one

adopted by the majority "will probably operate as the functional equivalent[s]" of

each other. *Id*. at 407.

Further proving that *Moldowan* is not a no-fault or negligence standard, jury

instructions in this Circuit read *Moldowan* to require that a defendant "knowingly or

recklessly concealed" evidence. *See, e.g.*, Jury Instrs., *Gillispie v. Miami Township*, 3:13-cv-00416-TMR (S.D. Ohio), R. 472, PageID 15546.

Hardin's arguments to the panel faithfully followed the real standard announced by *Moldowan*, not the no-fault or negligence standard Thurman claims that case stands for. Hardin didn't argue that there was a no-fault or negligence standard—he argued that because the exculpatory value was "apparent," no "additional" evidence of bad faith was required. Appellee Br. at 42 n. 8 (also noting that the district court applied the correct standard).

**b.** The standard adopted in *Moldowan* is entirely consistent with the law in other circuits.

For example, the Fourth Circuit found the requisite mens rea was present where a witness's story kept evolving but the officers "chose not to disclose" the earlier versions, which they knew were inconsistent with the final version disclosed to the prosecutor. *Owens v. Balt. City State's Atty's Off.*, 767 F.3d 379, 396 & n.6, 398 (4th Cir. 2014). That's the rule of *Moldowan*: officers can be held liable when they suppress evidence even though its exculpatory or impeaching nature is apparent.

And the *Moldowan* rule—suppressing evidence despite its apparent exculpatory value—is similarly consistent with the cases Thurman mentions from the Ninth and Tenth Circuits. *See Tennison v. City & Cty. of San Francisco*, 570 F.3d

1078, 1087, 1089 (9th Cir. 2009) ("deliberate indifference or reckless disregard");
*Johnson v. City of Cheyenne*, 99 F.4th 1206, 1225 (10th Cir. 2024) ("at least
knowingly or recklessly"); *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) ("The civil
law generally calls a person reckless who acts or (if the person has a duty to act) fails
to act in the face of an unjustifiably high risk of harm that is either known or so
obvious that it should be known." (citing Prosser and Keeton § 34, pp. 213–14;
Restatement (Second) of Torts § 500 (1965)); *Brawner v. Scott County*, 14 F.4th 585,
591 (6th Cir. 2021) (same definition of recklessness).

The Eighth Circuit is no different. Judge Murphy's concurrence suggested
there's an Eighth Circuit case that "has facts like this case" but where some further
showing of bad faith was required. Murphy Con. 26. But that Eighth Circuit case
didn't have facts like this one: The evidence at issue "had neither exculpatory nor
impeachment value," so not even the prosecutor (whose duty is no-fault) committed
a *Brady* violation, the defendant serologist could not have been "aware" of
exculpatory value (since none existed), and the court therefore held that some further
evidence of bad faith was required. *Villasana v. Wilhoit*, 368 F.3d 976, 979 (8th Cir.
2004). Again, that's consistent with *Moldowan*. *Moldowan*, 578 F.3d at 383–86
(some other showing of bad faith required when the evidence is not apparently
exculpatory but merely "potentially useful"). *Villasana* made clear that if the
evidence *had been* exculpatory, the same rule as *Moldowan* would have applied: "a

conscious effort to suppress exculpatory evidence" would have satisfied the standard. *Villasana*, 368 F.3d at 980.

The fact that other circuits are consistent with *Moldowan* is not surprising: no higher standard is demanded by the text of the Fourteenth Amendment's Due Process Clause (which the Supreme Court interpreted in *Brady* itself and which does not distinguish between prosecutors and other actors). Nor is a higher standard demanded by looking to the most analogous common-law tort. After all, the "malice" element of common-law malicious prosecution "may be inferred" from "a want of probable cause." Thomas M. Cooley, *The Law of Torts*, *180–81, *185 (1880); Restatement (Second) of Torts § 669 & cmt. a (Am. L. Inst. 1977). That parallels *Moldowan*'s holding that the necessary mens rea can be inferred from "aware[ness] of the exculpatory value" of suppressed evidence. And of course, elements from common-law torts are only incorporated into Section 1983 "to the extent consistent with the values and purposes of the constitutional right at issue." *Chiaverini v. City of Napoleon*, 144 S. Ct. 1745, 1750 (2024). So, for instance, this Court has declined to import common law's malice element into a Fourth Amendment malicious-prosecution claim because doing so would be inconsistent with the Supreme Court's Fourth Amendment case law. *Sykes v. Anderson*, 625 F.3d 294, 309–10 (6th Cir. 2010). The same is true here: A common-law malice element could only be appended to a Section 1983 *Brady* claim if *Brady* itself left room for one, which it does not.

**2.** Finally, it's worth noting that even if "bad faith" is required, and even if this Court wants to impose an evidentiary rule that a showing of bad faith cannot be proven solely by the knowing suppression of evidence whose exculpatory nature is apparent to the officer, Thurman would *still* lose this case. Remember, Thurman's own supervisor characterized his conduct as "fraudulent," "shocking," and "extremely wrong and extremely concerning." Thomas Deposition, R. 316-9, PageID 21983, 21988, 22047–49. And a reasonable jury could surely find that the man who wrote down that Hardin was guilty and an "avid devil worshippe[r]" before even beginning his testing was not operating in good faith.

Thurman's rejoinder is to pretend that he followed his lab's policy by disclosing only his final report and not his underlying data. But that argument ignores the critical fact that he took *exculpatory* data, rejected it, and wrote an *incriminating* report that is the exact opposite of his data. Not surprisingly, he cited no policy that allowed him to do *that* and still turn over only the final report. This case would thus be a poor vehicle to tease out whatever theoretical daylight exists between "bad faith" and the mens rea that a reasonable jury can find when someone suppresses evidence despite awareness of its apparent exculpatory value.

\*     \*     \*

This Court should not go en banc to address a phantom rule that would not matter "from a practical standpoint," even if it wasn't phantom. Nor should it go en

banc to trade one rule for its "functional equivalent." And when taking cases en banc and spending the resources of the full Court, the Court should pick cases where the questions and answers have a chance to influence the actual cases and controversies before the Court. Because Thurman loses this case under any answer to either question, this Court should deny rehearing en banc.

Respectfully submitted,

s/ Anthony Balkissoon

Anthony Balkissoon
Anna Benvenutti Hoffmann
Emma Freudenberger
Mary Katherine McCarthy
Neufeld Scheck Brustin
Hoffmann & Freudenberger, LLP
200 Varick Street, Suite 800
New York, NY 10014
Telephone: 212-965-9081
Attorneys for Plaintiff-Appellee
Garr Keith Hardin

**CERTIFICATE OF COMPLIANCE**

This response complies with the type-volume limitation of Federal Rule of Appellate Procedure 40(d)(3) because it contains 3,873 words excluding the parts exempt by Federal Rule of Appellate Procedure 32(f). This response complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Word in 14-point Times New Roman.

Date: April 11, 2025        *s/ Anthony Balkissoon*

**CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing document was filed electronically on April 11, 2025 and will be served upon all counsel of record via the Court's ECF system.

*s/ Olay Ajayi, paralegal*